197 So. 666
**CITY OF BIRMINGHAM v. WHITFIELD.**

**6 Div. 526.**

Court of Appeals of Alabama.

Aug. 6, 1940.

W. J. Wynn and John S. Foster, both of Birmingham, for appellant.

J. L. Drennen, of Birmingham, for appellee.

SIMPSON, Judge.

This action was brought under the homocide act, Sec. 5695, Code 1923, for the wrongful death of the plaintiff's five year old daughter. Upon verdict and judgment for plaintiff, defendant appealed to this court.

The complaint, in one count, upon which recovery proceeded, was: "Plaintiff, Marie Whitfield, claims of defendant, City of Birmingham, a municipal corporation, $5,-000.00, as damages, for that on Wednesday, August 3, 1938, plaintiff was and is now a citizen of said City of Birmingham, having her residence at 556 Gamma Street in said City, and was the mother of Sara Whitfield, who was also known as Sara Robinson, and who at said time was of the age of five years, having been born January 8, 1933, and resided with plaintiff, and had no legal father, and on said day, said Gamma Street was a public street in said City of Birmingham and intersected Avenue D, another public highway in said City of Birmingham and at said intersection there was a bridge across said Avenue D, there being at that time a branch or ditch through which water flowed, and said bridge was then and there maintained over and across said branch as a part of said highway and highways for the use of the public having occasion to cross said Avenue D at said intersection. That on said day, soon after a hard rain the said child was on said bridge, having come upon said bridge from a house on Gamma Street just across and on the north side of said bridge and on the east side of said Gamma Street, and at said time said water in said ditch was nearly as high as the bridge, and said child fell off of said bridge into the said water and was drowned, to the proximate damage of plaintiff, the mother of said

child. Plaintiff avers that said bridge was not reasonably safe and was dangerous for the use of children of the age of her daughter, particularly when the water under it was high, or at flood times, and said bridge had no rails, banisters or guards for the protection of those using the same, and being constructed without banisters or rails, in times of high water, created and constituted an attractive nuisance to children of that age, and that the *maintenance* of said bridge as the same was maintained *constituted a defect in said highway* at said intersection, and that defendant had notice and knowledge of said fact and said dangers and defects and *negligently permitted the same to exist* after such knowledge or notice. Plaintiff avers that her said child was drowned, and she sustained said damage as a proximate result of said negligence of said defendant. Plaintiff avers that she has heretofore on to-wit: the 10th day of August, 1938, presented to said City of Birmingham, her claim in writing, duly verified in the manner provided by law in such cases, and that she has heretofore demanded in writing of defendant the name and address of the employee, contractor, agent or party who constructed said bridge and who may be jointly liable with said defendant in this cause, and whose duty it was to maintain said intersection in a reasonably safe condition, and has not been furnished and does not know the name of such agent, servant, employee or contractor, and notwithstanding she has made such claim, plaintiff has been paid nothing by defendant because or by reason of the death of her said child, hence this suit." (Emphasis supplied.)

Demurrers, general in form, were interposed to the complaint, asserting that the count failed to aver or show any legal duty owing by the defendant to the plaintiff or the breach of any such duty and that the quo modo of the negligence averred was set out in the complaint, but the facts stated were insufficient to constitute negligence. The action of the trial court in overruling these demurrers is one of the main insistences of error upon appeal.

Our conclusion on this question can best be illustrated by a few principles of law, quoted from the authorities, which, in our opinion, are governing.

■ 1. "It was [is] the duty of the municipal corporation * * * to keep the street and sidewalks in a reasonably safe condition for travel and for use by its citizens and the public generally, and this duty extends to the entire width of the streets and sidewalks appropriated to such use and purposes." Birmingham v. Tayloe, 105 Ala. 170, 176, 16 So. 576, 577.

■ 2. "A municipal corporation disregards one of its plainest duties when it permits an unguarded pit, such as that above described [being an opening of a storm sewer alongside a wooden bridge which spanned the sewer at the intersection of the street and sidewalk], to remain in a city thoroughfare, where of necessity it is a constant peril to travelers. In the present case the negligence of the authorities in this regard was obvious and glaring." City of Birmingham v. Lewis, 92 Ala. 352, 355, 9 So. 243.

■ 3. "In addition to the duty to repair, the duty of a municipality to use ordinary care to keep its streets in condition for use includes the duty where there are dangerous obstructions, *declivities,* or excavations in or near the street, whether created by the municipality itself or by third persons, where it has notice thereof or notice is unnecessary, to take proper precautions to guard against accidents by the use of *railings, barriers,* lights or the like, especially at night." (Italics ours.) McQuillin Municipal Corporations, 2nd Edition, Vol. 7, Sec. 2984, p. 201; quoted with approval in City of Birmingham v. Cox, 230 Ala. 99, 159 So. 818.

■ "Accordingly, the well settled general rule is that a municipality is required to erect and maintain suitable barriers where there are dangerous places along streets, which without such protection will render the streets unsafe to travelers in the usual modes by night or day," etc. McQuillin Municipal Corp., Sec. supra, p. 204-205.

■ 4. "The proprietors of a bridge must maintain necessary guard rails thereon of a character sufficient to subserve the purpose of protecting bridge users, and are liable for resultant damages where they fail in such duty." 11 C.J.S., Bridges, p. 1109, § 72b.

5. "The height, width, length, manner of approach, and conditions of travel would enter into the question of reasonable safety in the particular case. As a rule, where there is need for a bridge, such safeguards should be provided." Hovater v.

Franklin County, 217 Ala. 439, 440, 116 So. 526, 527. Note, 86 A.L.R. 1389 et seq.

Applying the law, quoted, it is the opinion of this court that, as against the demurrers interposed, the count was sufficient. The negligence counted on was the failure of the city to maintain the bridge, described, in a reasonably safe condition. Such was its duty to persons traveling thereover, including the child of the plaintiff.

Appellant, by cogent argument of counsel in brief, urges that the action is one for maintaining an attractive nuisance, with allegations insufficient to charge culpable negligence. This contention is untenable. The allegation, that the condition described in the complaint "constituted an attractive nuisance to children of that age," although superfluous and might well have been omitted, is merely matter of inducement and in no way constitutes the gravamen of the complaint. It clearly appears that the suit proceeded for recovery upon the alleged negligent conduct of the city in maintaining the bridge in the unsafe condition described. Furthermore, it is disclosed by the evidence, the special written charges requested by the parties, and the general oral charge of the court, which was ample, clear and correct, that the case was tried upon this theory. At the defendant's request, the trial court, in special written charges, instructed the jury that "the branch at Gamma Street was *not* an attractive nuisance" and that there could be no recovery by the plaintiff unless the bridge, at the time of the accident, "was not reasonably safe for travel thereon." Other instructions of the court, oral and written, of like import, make it clear that the case was tried on this theory, i. e. "that the maintenance of said bridge as the same was maintained constituted a defect in said highway at said intersection, and that defendant had notice and knowledge of said fact and said dangers and defects and negligently permitted the same to exist after such knowledge or notice." The trial having thus proceeded and the court having charged out of the case all question of attractive nuisance, the allegation thereof in the complaint was harmless. Best Park & Amusement Co. v. Rollins, 192 Ala. 534, 68 So. 417, Ann.Cas.1917D, 929.

It is insisted that the complaint sought to set out specific acts which in themselves did not constitute culpable negligence as a matter of law. We do not so construe the averments of the count.

The settled rule of pleading is that negligence may be averred in general terms, but if the pleader attempts to set out the quo modo of the negligence charged, then the facts alleged must in law constitute negligence. Jinright v. Archer, 16 Ala.App. 450, 78 So. 713; City of Birmingham v. Cox, 230 Ala. 99, 159 So. 818. The negligence here charged was that of maintaining the bridge without guards or banisters, the other allegations being merely descriptive of the conditions surrounding said negligent conduct, then and there existing.

This court is likewise of the opinion that the complaint sufficiently alleged a duty owing and a breach thereof. It was the defendant's duty to maintain the bridge, in its public street, in reasonably safe condition for the benefit of a class of persons to which the plaintiff's child belonged, i e. travelers thereover. A like duty, therefore, rested upon the defendant in regard to this child, as alleged in the complaint. Sloss-Sheffield Steel & Iron Co. v. Hubbard, 14 Ala.App. 139, 68 So. 571; Mayor, etc., of Birmingham v. McCary, 84 Ala. 469, 474, 475, 4 So. 630. In this connection, while not here controlling, it is interesting to note that the degree of caution which is necessary to reach the required standard of reasonable care to be exercised may vary according to the capacity of the person with respect to whom such duty exists and that those upon whom the duty rests of exercising reasonable care toward children must calculate upon the fact that children are expected to act according to their known characteristics and childish impulses. 45 C.J. 701, Sec. 75, 702–3, Sec. 78; Thompson v. Alexander City Cotton Mills Co., 190 Ala. 184, 191, 67 So. 407, Ann.Cas.1917A, 721; Birmingham & Atlantic Ry. Co. v. Mattison, 166 Ala. 602, 52 So. 49; Williams v. Bolding, 220 Ala. 328, 124 So. 892.

It is urged on this appeal that there was error in the refusal of the trial court to give for the defendant the general affirmative charge and, failing, in the overruling of its motion for a new trial. The negligence counted on, as well as the conditions upon which such negligence was based, as described in the complaint, was fully sustained by the evidence and it is the conclusion of this court that the court below correctly ruled in each instance. It is disclosed that this wooden bridge

which formed a part of and was about the same width as the traveled portion of Gamma Street was maintained without guard rails of any kind at and for a considerable time prior to the accident. In fact, the plaintiff, who had lived in the neighborhood for twenty four years, testified that the bridge had never had guard rails but was "just a flat bridge." It appears also that this was a settled community of negro residents of the city, from which it can be reasonably inferred that there was considerable travel along the street and over the bridge. The evidence further discloses that, at the time of the accident, the plaintiff's child, who was using said bridge in coming to her home, became frightened or for some other cause fell from it into the surging water, risen near the level of the bridge as a result of heavy rain and running rapidly under it; that she was swept away and discovered dead at a distant point several miles away; that there was no sidewalk along this street, the road and bridge being used as a passway for pedestrians and vehicles alike; that during heavy rains the condition of the water was as it was on this day and sometimes flowed over the bridge; all of which had existed for a long time. One of the city engineers, witness for the defendant, testified that guard rails were placed there by defendant at different times but were intermittently torn down and taken away by residents of the community, for use as fire wood; that since the accident the city had erected, in place of this bridge, one of stone, with suitable guards on the side, and that in his opinion guard rails or banisters on the wooden bridge were necessary. The defendant sought to exculpate itself by evidence that, upon periodic inspections by its employees, hand rails were replaced when missing, the import of which testimony, it seems, was a tacit admission that the bridge without guards or banisters or protecting sides was unsafe. It is clear that whether or not the defendant was maintaining the bridge in an unsafe condition for the travel thereon was for the determination of the jury, and we so hold.

Appellant further contends that the action charged negligence in *constructing* (and not for maintenance of) the bridge without banisters or rails, and further that it is averred that defendant had *notice and knowledge* (not notice *or* knowledge) of this fact; that the proof failed, in each instance, to sustain these averments, thereby entitling the defendant to a directed verdict. A careful reading of the record convinces us that there was sufficient evidence on each of these issues to require their submission to the jury. In addition, as observed hereinabove, as to the charge of negligence, the complaint was for the maintaining of the structure in the alleged unsafe condition. Likewise, as to the latter insistence, the allegation that the defendant "negligently permitted the same to exist after such knowledge *or* notice" is a sufficient allegation in law and this alleged fact was amply sustained by the evidence and inferences reasonably to be drawn therefrom.

It therefore results that we are not in accord with the several insistences of appellant. The record is free of substantial error and the judgment of the lower court is affirmed.

Affirmed.