Beth Palmer KOPCZYNSKI, Individually and as next friend and parent of Alisha Palmer and Alisha Palmer, Appellants–Plaintiffs,

v.

David Bryan BARGER and Peggy Lucas Barger, Appellees–Defendants.

No. 88A05–0612–CV–703.

Court of Appeals of Indiana.

June 27, 2007.

Daniel L. Brown, Allen, Allen & Allen, Salem, IN, Attorney for Appellants.

Thomas E. Scifres, Thomas E. Scifres, P.C., Salem, IN, Attorney for Appellees.

## OPINION

BAKER, Chief Judge.

Appellants-plaintiffs Beth Palmer Kopczynski (Beth) and her minor daughter, Alisha Palmer (collectively, the Palmers), appeal the trial court's grant of summary judgment in favor of appellees-defendants David and Peggy Barger (collectively, the Bargers) on their claims for negligence and premises liability. Specifically, the Palmers claim that summary judgment was improper because there was a genuine issue of material fact as to whether the Bargers were negligent in allowing Alisha to play on their trampoline without any supervision. Alternatively, the Palmers contend that the Bargers should be held liable for the injuries that Alisha sustained because the trampoline was an attractive nuisance. Concluding that summary judgment was properly entered for the Bargers, we affirm the judgment of the trial court.

## FACTS

Sometime in late 2001 or early 2002, Beth rented a mobile home in Washington

County next to the Bargers' residence. On January 30, 2002, twelve-year-old Alisha and her two brothers arrived home from school shortly before 4:00 p.m. Beth was at work, and she had given the children instructions to stay in the house and complete their chores. Alisha did not have permission from the Bargers to enter their property or use the trampoline that was in the yard. Moreover, the Palmers had never spoken with the Bargers or visited them before the incident occurred. Beth had expressly instructed Alisha and the other children to "stay in their own yard" for their own safety because there were "dump trucks" on the neighboring property. Appellees' App. p. 21.

Sometime before Beth returned home from work, the Bargers' six-year-old son, Bryan, was jumping on the Bargers' trampoline. Bryan's mother was at work, and his father was indoors tending to the Bargers' other child-four-month-old Katelyn. The undisputed evidence shows that Bryan invited Alisha and one of her brothers to join him and another friend on the trampoline. Alisha stated that she had no reason to believe that the Bargers knew she was jumping on the trampoline. As all four were jumping, Alisha landed awkwardly and sustained a serious injury to her right knee.

Although the Bargers allowed Bryan to jump unsupervised, the trampoline contained the following instructions and warnings:

> Only one person at a time on the trampoline. Not recommended for use by children under 6 years of age. Multiple jumpers increase the chances of loss of control, collisions, and falling off. This can result in broken head, neck, back or leg.

Appellants' App. p. 86. Additional instructions to the "supervisor" provided that: "All trampoline users must have mature, knowledgeable supervision, regardless of the skill or age of the jumper." *Id.* at 87. The Bargers knew of the safety instructions and had told Bryan not to permit anyone to use the trampoline without their permission and to make sure that only one person jumped on the trampoline at a time. The Bargers had previously "run off" other children from the neighborhood who had played on the trampoline without their permission. *Id.* at 57, 75.

Alisha acknowledged that none of her family members had ever entered the Bargers' property before January 30, 2002, and she characterized her relationship with the Bargers as that of "strangers." *Id.* at 39. Indeed, the invitation from Bryan for Alisha to jump on the trampoline was the first communication between the two families in the three months that they had been neighbors.

Because of Alisha's injuries, the Palmers filed a complaint for damages against the Bargers on January 22, 2004, alleging that the Bargers negligently permitted Alisha to jump on the trampoline without any supervision. Thereafter, on December 30, 2005, the Palmers amended their complaint, asserting that the Bargers could also be liable under an attractive nuisance theory.

On June 9, 2006, the Bargers filed an amended motion for summary judgment,[1] claiming that they were entitled to a judgment as a matter of law because Alisha was a trespasser on the property and that the doctrine of attractive nuisance was inapplicable under these circumstances. Following a hearing on August 25, 2006,

---

1. The Bargers filed their initial motion for summary judgment on August 12, 2005. Appellants' App. p. 204.

the trial court granted the Bargers' motion for summary judgment. The Palmers now appeal.

## DISCUSSION AND DECISION

### I. Standard of Review

Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). In reviewing a summary judgment ruling, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *AutoXchange.com, Inc. v. Dreyer and Reinbold, Inc.*, 816 N.E.2d 40, 47 (Ind.Ct.App.2004). Thus, on appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Id.* In doing so, we consider all of the designated evidence in the light most favorable to the non-moving party. *Id.* The party appealing the grant of summary judgment has the burden of persuading this court that the trial court's ruling was improper. *Id.* Accordingly, the grant of summary judgment must be reversed if the record discloses an incorrect application of the law to the facts. *Ayres v. Indian Heights Volunteer Fire Dep't, Inc.*, 493 N.E.2d 1229, 1234 (Ind.1986).

■ Summary judgment is rarely appropriate in negligence cases because they are particularly fact sensitive and are governed by a standard of the objective reasonable person—one best applied by a jury after hearing all of the evidence. *Rhodes v. Wright*, 805 N.E.2d 382, 387 (Ind.2004). Nonetheless, summary judgment is appropriate when the undisputed material evidence negates one element of a negligence claim. *Id.* at 385. An individual's status on the premises of another, along with the

duty owed, is a matter of law for determination by the trial court. *Taylor v. Duke*, 713 N.E.2d 877, 881 (Ind.Ct.App.1999). Therefore, when the question is one of the plaintiff's visitor status, the issue "is proper for summary judgment." *Morningstar v. Maynard*, 798 N.E.2d 920, 922 (Ind.Ct. App.2003).

### II. The Palmers' Arguments

#### A. Negligence

■ The Palmers first contend that the trial court erred in granting summary judgment for the Bargers because the designated evidence established that Alisha was a social guest on their property when she was using the trampoline. Thus, the Palmers argue that a genuine issue of material fact existed as to whether the Bargers should be liable for Alisha's injuries because they failed to supervise the children while they were playing on the trampoline.

■ To establish a claim for negligence, a plaintiff must establish that (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; and (3) the breach of duty proximately caused the injury. *Dennis v. Greyhound Lines, Inc.*, 831 N.E.2d 171, 173 (Ind.Ct.App. 2005), trans. *denied.* The first step in resolving premises liability matters is to determine the plaintiff's visitor status, which defines the duty owed by the landowner. *Morningstar*, 798 N.E.2d at 922. When applying the negligence standard to accidents that are caused by a condition on an individual's premises, the duty owed by a landowner to an entrant on the land is determined by the entrant's status as an invitee, licensee, or trespasser. *Burrell v. Meads*, 569 N.E.2d 637, 639 (Ind.1991). That said, our task is not to judge whether the Palmers have proved each element of their claim; instead, we must determine whether the Bargers have adequately met

their burden of proving a lack of any genuine issue of material fact in the evidence designated to the trial court. *Dennis,* 831 N.E.2d at 173.

▮ We note that the lowest duty is owed to trespassers, to whom the landowner only has the duty to refrain from willfully or wantonly injuring the trespasser after discovering his presence on the premises. *Taylor,* 713 N.E.2d at 881. Wanton and willful conduct consists of either: (1) an intentional act done with reckless disregard of the natural and probable consequence of injury to a known person under the circumstances known to the actor at the time; or (2) an omission or failure to act when the actor has knowledge of the natural and probable consequence of injury and has opportunity to avoid that risk. *Nesvig v. Town of Porter,* 668 N.E.2d 1276, 1283 (Ind.Ct.App.1996). Known probability of injury is the key to the consideration of wantonness. *Taylor,* 713 N.E.2d at 882.

▮ While trespassers and licensees both enter the premises for their own convenience, curiosity, or entertainment, licensees are privileged to enter or remain on the land by virtue of the owner's or occupier's permission. *Burrell,* 569 N.E.2d at 639–40. The landowner owes a licensee the same duty owed to a trespasser, but the landowner must also refrain from acting in a manner that increases the licensee's peril. More specifically, the landowner must warn a licensee of any latent danger on the premises of which the landowner has knowledge. *Taylor,* 713 N.E.2d at 881.

▮ The highest duty is owed to an invitee. An invitee may fall within one of three categories: public invitee, business visitor, or social guest. *Id.* The landowner must exercise reasonable care for the protection of the invitee while on the premis-

es. *Burrell,* 569 N.E.2d at 639–40. The *Burrell* court adopted the Restatement (Second) of Tort's definition of this duty:

> "A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger."

*Id.* at 639–40. The duty of reasonable care extends not only to harm caused by a condition on the land but also to activities being conducted on the land. *Estate of Pflanz v. Davis,* 678 N.E.2d 1148, 1151 (Ind.Ct.App.1997). In determining whether an individual is an invitee or a licensee, the distinction between the terms "invitation" and "permission" becomes critical. *Rhoades v. Heritage Inv., LLC,* 839 N.E.2d 788, 792 (Ind.Ct.App.2005), *trans. denied.*

▮ This court has observed that the landowner is not an insurer of the safety of children. *Swanson v. Shroat,* 169 Ind. App. 80, 345 N.E.2d 872, 877 (Ind.Ct.App. 1976). However, courts must consider the ability of a child to perceive and avoid danger in evaluating the premises owner's liability for a child, in light of the child's youth and lack of experience, with the understanding that "dangers that may be obvious to an adult are often hidden to a child." *Id.* Thus, as this court recognized in *Johnson v. Pettigrew:*

> [An] invitee's peculiar status as a child may alter the degree of "reasonable care and diligence" required on the part of

the occupier of land. Indeed, the court recognized this possibility in *City of Birmingham v. Whitfield*, 29 Ala.App. 454, 197 So. 666 (1940):

> "[T]he degree of caution which is necessary to reach the required standard of reasonable care to be exercised may vary according to the capacity of the person with respect to whom such duty exists ... those upon whom the duty rests of exercising reasonable care toward children must calculate upon the fact that children are expected to act according to their known characteristics and childish impulses."

29 Ala.App. at 458, 197 So., at 670.

. . .

The child's ignorance of the danger in such a case would trigger the duty to warn on the occupier of the land, even though there might be no duty to warn an adult in the same position.

595 N.E.2d 747, 750 (Ind.Ct.App.1992) (quoting Second Restatement of Torts § 343B).

■ Thus, the general rule is that "where an owner can reasonably anticipate that a child is or will be in a dangerous position *but will be unable to appreciate the danger*, the owner is required to take reasonable precautions to protect the endangered child from injury." *Swanson v. Shroat*, 169 Ind.App. 80, 345 N.E.2d 872, 877 (Ind.Ct.App.1976) (emphasis added). Two caveats to this general rule are that the owner must have actual or constructive knowledge of the existence of the dangerous condition and the owner must also know or have reason to know that an "*unwitting licensee is likely to come into contact with the dangerous condition.*" *Id.* (emphasis added).

■ Finally, we note that when a duty of care exists, the determination of whether a breach of duty occurred is a factual question that requires an evaluation of the landowner's conduct with respect to the requisite standard of care. *Kinsey v. Bray*, 596 N.E.2d 938, 944 (Ind.Ct.App. 1992). In this regard, our Supreme Court has pointed out that "if the facts are in dispute, or if reasonable men may draw different conclusions from undisputed facts, the question of negligence is one for the jury." *Lincoln Operating Co. v. Gillis*, 232 Ind. 551, 114 N.E.2d 873, 875 (1953).

In this case, the designated evidence established that Alisha did not have permission from Bryan's parents to enter their property or use the trampoline. The Bargers acknowledged their awareness of the safety instructions and specifically warned Bryan not to permit anyone to use the trampoline without their permission and to have only one jumper on the trampoline at a time. Appellants' App. p. 66, 76. Indeed, the manufacturer clearly warned owners that trampolines carry the risk of serious harm, particularly if multiple children are on the trampoline and/or if activity on the trampoline is unsupervised. *Id.* at 86.

The Palmers had never spoken with the Bargers or visited them before the incident occurred. *Id.* at 39, 66; Appellees' App. p. 16. As noted above, the undisputed evidence designated to the trial court established that Alisha had never entered the Bargers' property before the date of the accident and she considered them "strangers." Appellants' App. p. 39. In fact, the invitation from Bryan to jump on the trampoline was the first communication between the two families in the three months that they had been neighbors. *Id.* And, while Beth did not expressly state that Alisha and the other children should not jump on the trampoline, she instructed them to "stay in their own yard" for safety reasons because there were "dump trucks"

on the neighboring property. Appellees' App. p. 21.

▮ Notwithstanding this evidence, the Palmers contend that the Bargers should be held liable because Bryan specifically invited Alisha to play on the trampoline. In *Holman v. State*, 816 N.E.2d 78 (Ind.Ct.App.2004), we addressed the issue of whether a minor could legally invite a third party onto his or her parents' property. A teenage boy had been convicted of residential entry after his girlfriend's father caught him climbing out of a bedroom window. The defendant claimed that he was authorized to enter the premises by his girlfriend, which was not disputed. However, the State claimed that the girlfriend, who did not own the premises and was only seventeen years old at the time, lacked the legal authority to consent to the defendant's entry onto the premises. In affirming the defendant's conviction, the majority opinion observed that while the defendant had previously been invited into the house, the teenagers had been surreptitiously arranging the nighttime visits because the girl's parents did not approve of their daughter's contact with the defendant. *Id.* at 82. Hence, the defendant could not have reasonably believed that he had a right to be at the house.[2] *Id.* In so concluding, we applied the following "totality of the circumstances" test in determining whether the minor could legally invite a third party onto her parents' premises:

(1) whether the minor lived on the premises;

(2) the minor's right of access to the property;

(3) whether the minor had the right to invite others;

(4) whether the minor was of an age, intelligence, and maturity at which

he or she could be expected to exercise at least minimal discretion; and

(5) the scope of consent to enter.

*Id.* (quoting *Atkins v. Georgia*, 173 Ga. App. 9, 325 S.E.2d 388, 390 (Ga.App.1984), *aff'd by* 254 Ga. 641, 331 S.E.2d 597 (1985)).

In applying the *Holman* factors in this case, the designated evidence established that Bryan lived at the house owned by his parents. Appellants' App. p. 51, 60. Given Bryan's young age, he certainly lacked the experience and maturity to appreciate the risk of liability inherent in inviting strangers onto his parents' property to jump on the trampoline. Moreover, the Bargers expressly prohibited Bryan from inviting others to jump on the trampoline without their permission or supervision. Appellees' App. p. 7–8. Hence, we conclude that Bryan lacked the authority to invite Alisha to play on the trampoline, a factor that might otherwise have triggered the Bargers' potential liability for her injuries.

Additionally, we acknowledge that a landowner's duties are heightened with regard to children who enter the premises. *Swanson*, 345 N.E.2d at 877. However, the landowner must take reasonable precautions to protect the child from injury only when the landowner "can reasonably anticipate that a child is or will be in a dangerous position but will be unable to appreciate the danger." *Id.*

Again, the designated evidence shows that the Palmers had no contact with the Bargers and the children had not previously entered the property, with or without permission. Appellants' App. p. 39; Appellees' App. p. 16. Alisha had never jumped on the trampoline before the incident, and the Bargers specifically told Bryan that no one was to use the trampoline without one of them being present.

2. Crone, J., dissenting.

Appellants' App. p. 66. Although Peggy had ordered several children to leave the trampoline one evening, there were no repeat occurrences. Appellees' App. p. 3–5; 10. Hence, no evidence suggested that the Bargers should have been aware that the Palmer children would enter the property and use the trampoline. Additionally, Alisha readily admitted that the landing surface of the trampoline was constantly moving as people jumped. Therefore, this does not qualify as a situation where the child was unable to appreciate the danger of the situation.

In sum, it is apparent from the designated evidence that Alisha was a trespasser when she entered the Bargers' property to play on the trampoline. Thus, under these circumstances, the Bargers only had the duty to refrain from willfully or wantonly injuring Alisha after her presence was discovered. *See Burrell*, 569 N.E.2d at 639. Because there is absolutely no evidence of willful or wanton conduct on the part of the Bargers, the Palmers' argument that the Bargers should be liable for Alisha's injuries because they failed to supervise the children when they played on the trampoline fails.[3]

### B. Attractive Nuisance

■ Notwithstanding our conclusion that Alisha was trespassing on the Bargers' property when her injuries occurred, the Palmers contend that summary judgment was inappropriate because the trampoline was an attractive nuisance. In other words, the Palmers claim that liability should attach because the designated evidence established that the trampoline was "inherently dangerous." Appellants' App. p. 6.

■ The attractive nuisance doctrine recognizes that children may be in-

capable of appreciating the dangers attendant to certain conditions on the premises of another. *Carroll v. Jagoe Homes, Inc.*, 677 N.E.2d 612, 616 (Ind.Ct. App.1997). For this doctrine to apply, our Supreme Court has observed that the following factors must be present:

(1) The structure or condition complained of must be maintained or permitted upon the property by the owner or the occupant thereof. (2) It must be peculiarly dangerous to children and of such a nature that they will not comprehend the danger. (3) It must be particularly attractive to children and provide a special enticement for children to play or sport thereon. (4) The owner must know, or the facts alleged must be such as to charge him with constructive knowledge, of the existence of such structure or condition, and that children do or are likely to trespass upon his property and be injured by such structure or condition. (5) The injury sustained must be the natural, probable and foreseeable result of the original wrong complained of.

*Pier v. Schultz*, 243 Ind. 200, 205, 182 N.E.2d 255, 258 (1962) (citations omitted). Additionally, as our Supreme Court determined in *Harness v. Churchmembers Life Insurance Co.*, 241 Ind. 672, 679, 175 N.E.2d 132, 135 (1961):

The doctrine of attractive nuisance, it has been said, is limited in its application to cases where the danger is latent, *and affords no basis for a recovery where the injury complained of was produced by a peril of an obvious or patent character. A danger which is not only obvious but natural, considering the instrumentality from which it*

---

**3.** As an aside, we note that there is no evidence that even if the Bargers had been

watching or supervising the children, they could have prevented Alisha's injury.

*arises, is not within the meaning of the attractive nuisance doctrine,* for the reason that an owner or occupant is entitled to assume that the parents or guardians of a child will have warned him to avoid such a peril.

(Quoting 38 Am.Jur., *Negligence* § 151) (emphasis added). The policy reasons behind the attractive nuisance doctrine include the consideration that children may not be mature enough to understand the dangers associated with trespassing or the latent dangers associated with the objects in question. *Kelly v. Ladywood Apartments,* 622 N.E.2d 1044, 1048 (Ind.Ct.App. 1993).

In this case, the Palmers have failed to designate any evidence establishing that the trampoline was "particularly dangerous to children and of such nature that they will not comprehend the danger." *Pier,* 243 Ind. at 205, 182 N.E.2d at 258. Although Alisha initially claimed that she had no idea how the accident could have been prevented, she subsequently asserted that the trampoline should have been bolted to the ground, that it should not have been on sloped land, and that multiple jumpers could have caused the fall. Appellees' App. p. 14. However, Alisha acknowledged that the trampoline never left the ground while she was jumping on it. *Id.* Also, inasmuch as the dangers of falling from heights are commonly known to children, the dangers of jumping on a trampoline, which presents a constantly moving landing surface, should be similarly obvious—particularly to a twelve-year-old.

Indeed, although Alisha testified that she had never jumped on a trampoline prior to the accident, she knew that the tarp of the trampoline moved up and down because she had observed Bryan jumping on previous occasions. Appellants' App. p. 36. Alisha also had no idea how the Bar-

gers might have prevented the trampoline from being placed on sloped land. Appellees' App. p. 14. In essence, the designated evidence established that Alisha knew of the trampoline's dangers, and the record is devoid of any evidence that there was any hidden peril that Alisha could not have comprehended.

There is also no evidence that the Bargers knew that children might trespass on their property and be injured by the trampoline. As noted above, there was no communication or interaction between the Bargers and the Palmers before the accident occurred. In our view, this lack of interaction between the families supports the notion that the Bargers would not anticipate that Alisha would enter their property and use the trampoline. Moreover, Beth had specifically instructed her children not to wander on to the neighbors' property. *Id.* at 21. Finally, the designated evidence established that the Bargers permitted other children on the trampoline only if the adults had invited them onto the property. *Id.* at 67.

In light of this evidence, it is apparent that the Bargers had no reason to know that Alisha might enter their property and jump on the trampoline without their express permission. Thus, the Palmers have failed to show that the Bargers may be held liable for Alisha's injuries under an attractive nuisance theory. While we are sympathetic to Alisha's plight, we conclude that summary judgment was properly entered for the Bargers.

The judgment of the trial court is affirmed.

FRIEDLANDER, J., concurs.

CRONE, J., dissents with opinion.

CRONE, Judge, dissenting.

I respectfully disagree with the majority's conclusion that Alisha was a trespass-

er and that the trampoline was not an attractive nuisance as a matter of law. Therefore, I dissent.

In determining Alisha's visitor status, I believe that we must also consider Bryan's invitation to jump on the trampoline from Alisha's perspective. In *Holman,* upon which the majority relies in concluding that Bryan lacked authority to invite Alisha to jump on the trampoline, the court addressed not only whether the homeowners' minor daughter had authority to consent to her boyfriend's entry into the home, but also whether the boyfriend's belief that he had permission to enter was reasonable. *See* 816 N.E.2d at 81 ("A defendant's belief that he has permission to enter must be reasonable in order for him to avail himself of the defense of consent [to the crime of residential entry]."). Likewise here, I believe that the reasonableness of twelve-year-old Alisha's belief that she had permission to jump on the Bargers' trampoline by virtue of six-year-old Bryan's invitation must be considered in determining her visitor status and presents a genuine issue of material fact that precludes a determination of her status as a matter of law.[4] *See J.C. Penney Co. v. Wesolek,* 461 N.E.2d 1149, 1153 (Ind.Ct. App.1984) ("[T]he facts of a particular case determine[ ] the visitor's status and the owner's corresponding duty."), *modified on reh'g on other grounds,* 465 N.E.2d 763.

Even assuming, as the majority concludes, that Alisha was a trespasser, I believe that there remains a genuine issue of material fact as to whether the trampoline was an attractive nuisance. We must consider the following factors:

(1) The structure or condition complained of must be maintained or permitted upon the property by the owner or the occupant thereof. (2) It must be peculiarly dangerous to children and of such a nature that they will not comprehend the danger. (3) It must be particularly attractive to children and provide a special enticement for children to play or sport thereon. (4) The owner must know, or the facts alleged must be such as to charge him with constructive knowledge, of the existence of such structure or condition, and that children do or are likely to trespass upon his property and be injured by such structure or condition. (5) The injury sustained must be the natural, probable and foreseeable result of the original wrong complained of.

*Pier,* 243 Ind. at 205, 182 N.E.2d at 258.

The Bargers maintained a trampoline on their property. It seems clear that trampolines are peculiarly dangerous to children, who are neither as discerning nor as dexterous as most adults. I disagree with the majority's conclusion that the "designated evidence established that Alisha knew of the trampoline's dangers[.]" Slip op. at 15. She had never jumped on a trampoline before, and there is no indication that she was aware that jumping on a trampoline, either alone or with other children, could result in injury. On summary judgment, the Bargers had the burden of establishing that Alisha comprehended the dangers of jumping on a trampoline, and they failed to meet this burden. The fact that the Bargers had previously chased uninvited neighborhood children off the trampoline demonstrates that trampolines are particularly attractive to children and "provide a special enticement for children to play or sport thereon." The Bargers' shooing away of the children, along with the dire safety warnings on the trampoline itself, put them on notice that children

---

4. By way of illustration, there is no evidence that Alisha was aware that the Bargers had told Bryan not to permit anyone to use the trampoline without their permission.

were likely to trespass upon their property and be injured by the trampoline. Finally, I believe that a trier of fact should determine whether Alisha's knee injury was a natural, probable, and foreseeable result of her entering the Bargers' property to jump on the trampoline.

In sum, I would reverse the trial court's grant of summary judgment in favor of the Bargers and remand for further proceedings to determine Alisha's visitor status and whether the trampoline was an attractive nuisance.